Victoria Mines, Inc. v. Commissioner.
Victoria Mines, Inc. v. Commissioner
Docket No. 109764.
United States Tax Court
1943 Tax Ct. Memo LEXIS 371; 1 T.C.M. (CCH) 870; T.C.M. (RIA) 43160; April 6, 1943
*371 John D. Garrison, Esq., 25 Broadway, New York City, for the petitioner. F. S. Gettle, Esq., for the respondent. STERNHAGEN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies of $261.15 in income tax for 1937 and of $7,475.62 in income tax and $468.13 in excess-profits tax for 1939. Petitioner contests (1) the disallowance of deductions for royalties and (2) the exclusion from the basis of percentage depletion of net smelter receipts from the recovery of ore from surface dumps. Findings of Fact Petitioner, a Montana corporation, filed its returns at Helena, Montana. Its returns were on an accrual basis. It was engaged in mining and milling gold ore. The only mining properties operated by it were the Largey and Monidah properties which were adjacent to each other and were operated by it as assignee of certain agreements. 1. The agreement under which the Largey and Monidah properties were operated were similar except in the property, the consideration, and the names of the parties of the first part. They were entitled "Lease and Agreement" and provided for the lease of the properties to petitioner for five years, unless sooner terminated. The petitioner *372 agreed to perform certain development work on the properties, except, however, that in the event second parties [petitioner] shall make the first payment hereinafter provided to be made under the option hereinafter given, said first payment being five per cent (5%) of the purchase price of One Hundred Thousand Dollars ($100,000.00), that then and in that event for the period of six months after the making of such payment said second parties shall not be compelled to do the work monthly as above specified. * * * *
Second parties further agree to pay to first parties as rent or royalty ten per cent (10%) of the net smelter returns of all ore hauled or shipped to a smelter from said above mentioned claims which assay Fifteen Dollars ($15.00) or less per ton, less the cost of hauling and shipping * * *. Petitioner also agreed to pay 15 per cent on ore assaying over $15 and less than $25 per ton; 20 per cent on ore assaying over $25 and less than $35; 25 per cent on ore assaying over $35 per ton. It also agreed to pay a percentage of the gross bullion or net smelter concentrate returns of all ore treated in any mill constructed by it. If the petitioner were to fail to comply with *373 the terms of the agreement or to perform the work for the period of three (3) months continuously, that then and in that event this lease and agreement shall be immediately and without notice of any character whatever to said second parties, terminated and at an end, and of no further force and effect. The agreements further provide: In consideration of the foregoing covenants and agreements, and in consideration of the further payment of One Dollar ($1.00) and other good and valuable considerations * * * the parties of the first part do hereby give and grant to the parties of the second part the right and option to purchase from the parties of the first part all of their right, title and interest in and to the mining claims hereinafter particularly described * * *. The purchase price under the option was $100,000 for the Monidah properties, and $50,000 for the Largey properties, payable five per cent (5%) thereof on or before One (1) year from and after the date hereof; twenty-five per cent (25%) thereof on or before two (2) years from and after the date hereof; twenty per cent (20%) thereof on or before three (3) years from and after the date hereof, twenty-five per cent (25%) *374 thereof on or before four (4) years from and after the date hereof, and twenty-five per cent (25%) on or before five (5) years from the date hereof. * * * *
all royalties paid to said party of the first part by said party of the second part from the proceeds of ores mined, hauled or shipped from or treated upon the premises hereby leased, under the terms hereof, shall be applied and credited upon the installment of the purchase price of the above described mining claims, hereinbefore mentioned, next falling due thereafter. First party agrees that upon payment to it of the entire purchase price, above set forth, within the times hereinabove set forth, it will cause to be made, executed, acknowledged and delivered to said second party, a good and sufficient deed, conveying to said second party, his heirs and assigns, all of the right, title and interest of said party of the first part in and to the mining claims hereinabove particularly described. that if said party of the second part fails to make said payments in the manner and at the time hereinabove specified, then, and in that event, said party of the first part may terminate said lease and option and all rights of second *375 party thereunder without notice of any character to second party. that on the termination of this lease and option, by forfeiture or otherwise, all payments theretofore made by second party to first party, either as royalty or on the purchase price of said claims, shall be retained by and be the property of first party as further consideration for entering into this agreement, and said first party shall be under no obligation to return said payments, or any part thereof, to the party of the second part, and shall be under no obligation to make, execute or deliver said deed as above provided. Forfeiture of the lease would terminate the option and failure to make payments on the purchase price would terminate the lease. Petitioner made the following payments: A
B
Royalties
Payment of
Based on
Option Price
Year
Production
Installments
(Largey Properties)
1937
$ 2,500.00
1938
$ 1,464.76
5,959.47
1939
2,515.11
12,764.94
1940
4,316.11
8,845.39
1941
4,028.64
4,043.48
1942
2,982.27
579.83
$15,306.89
$34,693.11
$50.000.00
(Monidah Properties)
1937
$ 3,660.60
1938
8,873.59
$18,102.65
1939
45,001.85
1,912.04
1940
14,797.02
1941
7,137.23
515.02
$79,470.29
$20,529.71
$100,000.00
*376 When petitioner took over these claims in 1936, it rehabilitated the camp, brought in power, and proceeded to build a mill. Actual production started in September, 1937. The Monidah group had a well defined relatively high-grade ore body. In late 1939, it was discovered that the mine ore shoot did not reach as far as the 1,000 foot level. Several subsidiary fissures and ore bodies which were good but unpredictable were being mined. In February, 1940, petitioner discovered that the ore body went only 30 feet below the 900 foot level. It took fee title to the Monidah properties in 1941, and to the Largey properties in 1942. 2. In 1939, petitioner recovered ore from surface dumps on the Hudson claim, which adjoined the Monidah property. These dumps consist of rock pulled out in the old days from a mine on the Hudson claim that had caved in. They had not been processed in any way. The Hudson claim was owned by the Largey Estate, a corporation. This operation was pursuant to an oral agreement with the owners, entitling petitioner to recover ore from the surface dumps and to mine underground on a royalty basis of 7 1/2 per cent of gross. There has been no underground mining on this claim *377 by petitioner. In 1939, petitioner recovered ore from these surface dumps in the net amount of $15,340.48 proceeds from sales thereof to smelters after deducting $48.31 freight. Opinion STERNHAGEN, Judge: 1. The deduction which the taxpayer seeks for the payments made to the owner of the Largey and Monidah properties on the theory that they were royalties was, we think, properly disallowed. The payments were more than mere royalties; they were part payments for the property, unreturnable if a sale was not consummated. In all substantial respects the considerations of decision are similar to those in Goldfields of America, Ltd., 44 B.T.A. 200. As in that case, the payments might turn out to be royalties if ultimately title to the properties were not taken, but it could not be said, as required by Section 23 (a), that they were not paid as part consideration for taking title or that the taxpayer had no equity in the property. The disallowance of the deduction is sustained. 2. We think also that the income from the recovery of ore from the dump on the Hudson claim is not properly to be included as mining income for purposes of the basis depletion. This *378 was not the product of mining operations nor was it an incident of mining operations. It was, therefore, unlike the situation in Kennedy Mining & Milling Co. v. Commissioner, 125 Fed. (2d) 399, and like that in Consolidated Chollar Gould & Savage Mining Co. v. Commissioner, 133 Fed. (2d) 440, C.C.H., 9298; P.H., 62,481); Atlas Milling Co. v. Jones, 115 Fed. (2d) 61; Carl M. Britt, 43 B.T.A. 254. Decision will be entered under Rule 50.